**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case Nos. 19-CR-30017-SMY** |
| | ) | **20-CR-30113-SMY** |
| **HALEY JAMES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM AND ORDER</u>**

**YANDLE, District Judge:**

On November 26, 2018, Bradley Warren robbed Kay Jewelers in Alton, Illinois of $160,818.00 in jewelry and an unknown amount of cash. Then, in December 2018 and January 2019, Warren, Defendant Haley James, and several co-defendants road-tripped from the Metro-East area to Mississippi, during which time James and Christina Spencer pawned some of the stolen jewelry in several states.

On March 5, 2019, James was charged with the offense of Accessory After the Fact, in violation of 18 U.S.C. § 3 (19-CR-30017), for which she subsequently pleaded guilty.  She was sentenced to 3 years' probation on November 12, 2019, and ordered to pay $160,818 in restitution.

On June 22, 2020, James was sentenced to 5 years' probation in the Eastern District of Missouri for the offense of Conspiracy to Destroy Communication Lines, Stations, and Systems (20-CR-30113).  That case was transferred to the jurisdiction of this Court on August 11, 2020.

The United States Probation Office has now submitted petitions to revoke James' supervised release for the Court's consideration in both cases. For the following reasons, the

undersigned declines to approve the petitions for filing and instead, orders early termination of James' supervised release.

### Haley James' Course on Probation

Soon after beginning probation, James began violating her terms and conditions by using marijuana, failing to consistently participate in court-ordered substance abuse and mental health treatment, failing to comply with the rules and regulations of the Residential Re-entry Center ("RRC"), and failing to make monthly restitution payments.  Consequently, on October 7, 2021, her probation was revoked.  She was sentenced to time served, 3 years of supervised release, was placed in a RRC for six months, and was ordered to resume outpatient co-occurring disorder treatment.

While on supervised release, notwithstanding receiving substance abuse and mental health treatment, including residential substance abuse treatment which she successfully completed on July 8, 2023, James has repeatedly tested positive for marijuana: on February 2, 2023;[1] March 3, 2023; May 19, 2023; July 15, 2023; and July 26, 2023.[2]  As a result, Probation recommends that her supervise release be revoked.

### Discussion

These cases, and others like it, present a serious dilemma: should the Court continue to punish supervisees for their marijuana addiction or habit by sending them to prison when they are not committing crimes and are otherwise safely reintegrating into the community? After

---

[1] James also tested positive for methamphetamine on this date, she continues to deny use of that substance.
[2] James has also incurred administrative violations and has consistently failed to make monthly restitution payments.

considering all relevant factors and reflecting on the purposes of supervised release, the Court concludes that in the case of Ms. James, the answer is no.

"Supervised release fulfills *rehabilitative ends*, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000) (emphasis added). "Supervised release, in contrast to probation, *is not a punishment* in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994) (emphasis added). That said, there is an obvious tension between the rehabilitative purpose of supervised release and revocation and imprisonment as punishment for non-compliance which has its genesis in the enactment of the Anti-Drug Abuse Act of 1986 ("ADAA"). Fiona Doherty, *Indeterminate Sentencing Returns: The Invention of Supervised Release*, 88 N.Y.U. L. Rev. 958, 1000 (2013).

> In enacting the ADAA…however, little consideration seems to have been given to the conceptual differences between supervised release and probation incorporated into the SRA.
>
> For those accustomed to parole and probation, the absence of a revocation mechanism for supervised release seemed like an "impractical oddit[y]." Many actors in the system wondered how supervised release could be effective unless courts and probation officers were granted systematic leverage over offenders. And leverage had always meant prison… Procedurally, the ADAA grafted the revocation mechanism for probation onto supervised release, ignoring the different theoretical roots of those systems.

*Id*. at 1001.

> The supervised release statute continued to instruct judges not to consider the goals of punishment and incapacitation when deciding whether to impose— and now revoke—supervised release. And yet, the possibility of revocation made supervised release indisputably about punishment, oversight, and coercion. Judges and probation officers were to gauge how well released prisoners were adjusting with the threat of more prison hanging overhead. Despite the statutory bar on punishment, people on supervised release could now be sent back to prison for conduct that did not even violate a federal criminal statute.

*Id*. at 1002.

Further complicating matters, certain offenses *require* revocation and imprisonment:

> If the defendant—
>
> (1) possesses [marijuana or another] *controlled substance* in violation of the condition set forth in subsection (d);
> (2) possesses a firearm, as such term is defined in section 921 of this title, in violation of Federal law, or otherwise violates a condition of supervised release prohibiting the defendant from possessing a firearm;
> (3) refuses to comply with *drug testing* imposed as a condition of supervised release; or
> (4) as a part of *drug testing*, *tests positive for illegal controlled substances more than 3 times over the course of 1 year*;
>
> the court *shall* revoke the term of supervised release and require the defendant to *serve a term of imprisonment* not to exceed the maximum term of imprisonment authorized under subsection (e)(3).

18 U.S.C. § 3583(g) (emphasis added).

Thus, drug use, including use of marijuana, requires a supervisee to be placed back in prison.

As the late U.S. District Judge Jack B. Weinstein noted:

> Without addressing the advantages and dangers of the change in criminal laws on smoking marijuana, it is obvious that marijuana use, through law, policy, and social custom, is becoming increasingly accepted by society. Many people from all walks of life now use marijuana without fear of adverse legal consequences.
>
> Yet, marijuana remains illegal for all purposes under federal law. *See* Silvia Irimescu, *Marijuana Legalization: How Government Stagnation Hinders Legal Evolution and Harms A Nation*, 50 Gonz. L. Rev. 241, 249 (2015); *but cf.* Sadie Gurman & Natalie Andrews, *Jeff Sessions Struggles to Get Planned Marijuana Crackdown Going*, Wall St. J., June 10, 2018 (discussion of a "bipartisan bill" which would prevent the federal government from interfering with state laws legalizing marijuana). Marijuana use violates a mandatory condition of federal supervised release and can require mandatory incarceration for some supervisees. *See infra* Section III(B)-(E)
>
> Effectively, courts are faced with a choice: imprison a marijuana user on supervised release or cut short supervision, forcing an attempt at further rehabilitation on the supervisee's own. Many men and women who have terms of incarceration imposed by this court are seeking to live productive, law-abiding lives, but are derailed by their marijuana addiction.

> No useful purpose is served through the continuation of supervised release for many defendants whose only illegal conduct is following the now largely socially acceptable habit of marijuana use.  The cost to tax- payers of long, repeating sentences and extended, unnecessary supervised release is substantial.

*U.S. v. Trotter,* 321 F. Supp. 3d 337, 340-341 (E.D.N.Y. 2018).

Courts have long grappled with supervisees' use of marijuana.  In fact, the Seventh Circuit addressed the issue nine years ago – before Illinois' decriminalization of the substance:

> The defendant's problem is marijuana . . . we have our doubts that imprisonment is an appropriate treatment for a marijuana habit. The 29 months that he served in prison beginning in 2009 did not break him of his habit; what is the basis for thinking that 14 more months in prison will?  Maybe with a job and a family and greater maturity he'll outgrow it, or reduce his consumption to a level at which it has no significant behavior or psychological ill effects.  The fact that he's impressed his employers suggests that he can function even with the habit, in which event it might have been better had the judge not imposed a prison sentence but instead had ordered a stricter regimen of treatment for the defendant's drug habit. . . .
>
> The defendant disobeyed the terms of his supervised release repeatedly, but his current profile is not that of a dangerous criminal, and the utility of his continued imprisonment is difficult to see.

*United States v. Smith*, 770 F.3d 653, 656-57 (7th Cir. 2014).

Here, confronted with this dilemma, this Court considers whether termination of Ms. James' supervised release at this juncture is most consistent with the rehabilitative v. penal purposes of the system.

"The court may . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is [1] warranted by the conduct of the defendant released and [2] the interest of justice." 18 U.S.C. § 3583(e)(1).  The court must consider several factors in deciding on early

termination:

(i)    "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1);

(ii)    the need for the sentence imposed "to afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B), "to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C), and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," *id.* § 3553(a)(2)(D);

(iii)    the "kinds of sentence and the sentencing range established for the applicable category of offense [or violation of probation or supervised release] committed by the applicable category of defendant" under the Sentencing Guidelines, *id.* § 3553(a)(4);

(iv)    "any pertinent policy statement issued by the Sentencing Commission," *id.* § 3553(a)(5); and

(v)    "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct...." *Id.* § 3553(a)(6).

The § 3553(a) factors weigh in favor of early termination here. Prior to her committing the offenses of convictions in these cases, James' criminal history consisted of convictions for Theft (x2), Possession of Burglary Tools, Tampering 1st Degree, Trespassing 1st Degree, and Property Damage 1st Degree. Significantly, James has not committed any crimes since beginning her original terms of probation. She has been employed (though sporadically) and is now pregnant. Treatment has not rehabilitated her from her habitual marijuana use; she clearly either does not have the desire or ability to stop at this point in her life. Because the revocation statute requires jail time for drug use, continued supervision will almost certainly do no more than keep the proverbial revolving door of supervised release and prison turning for James.

**Conclusion**

For the foregoing reasons, and pursuant to 18 U.S.C. § 3583(e)(1), Defendant Haley James'

supervised release in Case Nos. 19-CR-30017-SMY and 20-CR-30113-SMY is **TERMINATED**

effective upon entry of this Order.

**IT IS SO ORDERED.**

**DATED: August 7, 2023**

**STACI M. YANDLE**
**United States District Judge**